HARRY S. KAUFMAN, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8154, 11845.   Promulgated December 16, 1926.

The petitioner was not a personal service corporation during the years 1919 and 1920.

*J. Robert Sherrod, Esq.*, and *Ralph J. Schwarz, Esq.*, for the petitioner.

*J. Arthur Adams, Esq.*, for the respondent.

TRAMMELL: This is a proceeding for the redetermination of deficiencies in income and profits taxes for 1919 and 1920 in the amounts of $6,072.10 and $7,311.06, respectively, resulting from the disallowance by the Commissioner of personal service classification for each year and the inclusion in taxable income for 1919 of $333.12, representing dividends on stock owned by the petitioner.

#### FINDINGS OF FACT.

The petitioner is a Louisiana corporation with its principal office at New Orleans. During the years 1919 and 1920 it conducted an insurance agency dealing in all kinds of insurance except life. It acted as general and local agent for a number of insurance companies. In its capacity as general agent the petitioner had general supervision of from sixty to seventy-five agents of various insurance companies in about fifteen towns in different parts of the State. The insurance obtained by these agents was forwarded by them to the home offices through the office of the petitioner, who passed on questions of risk. The inspection of risks locally and throughout the State was done by an employee of the petitioner.

In its capacity of local agent the petitioner was engaged in securing business in New Orleans and vicinity. In 1919, in addition to certain stockholders, there were two employees and three solicitors who engaged in soliciting business. During 1920 a third employee was engaged in this phase of the work.

The petitioner's office force consisted as a rule of about seven employees. The turnover in office help was large, as in 1919 there

were a total of thirty-four persons who had been employed in the petitioner's office at various times during the year. During 1920 this number had increased to thirty-six.

The petitioner was allowed ninety days within which to make remittance to the home offices on insurance obtained locally and by agents in different parts of the State. The agents in the various parts of the State were allowed sixty days within which to make remittance to the petitioner. Most of the local business was collected for by the end of thirty days, and where the premium was small the business was on a cash basis. On local business, where the premium was large, terms of 50 per cent at the end of thirty days and 50 per cent at the end of sixty days were often allowed. No extensions were allowed beyond sixty days when the policy was canceled if payment had not been made. Notes were never accepted for premiums. Commissions due agents and the petitioner were deducted by petitioner in making monthly remittances to the home offices. Expenses for labor, clerk hire and stenographic help were $19,925.67 for 1919, and $29,338.44 for 1920. Other expenses, not including officers' salaries, interest, or taxes, were $8,597.28 for 1919, and $12,187.28 for 1920.

During 1920 the petitioner purchased for $45,000 an office building into which it moved. The financing of this purchase was done temporarily by bank loans, a mortgage having been issued subsequently.

Until the latter part of March, 1919, the outstanding capital stock of the petitioner was $10,000, which was owned as follows:

|  | Per cent. |
|---|---|
| Harry S. Kaufman | 54 |
| Otto J. Mayer | 23 |
| Joseph Levy | 23 |
|  | 100 |

In the latter part of March, 1919, the capital stock was increased to $25,000. For the additional stock, $15,000 was paid in cash. During the remainder of the time under consideration the stockholders' holdings were:

|  | Per cent. |
|---|---|
| H. S. Kaufman | 52. 0 |
| Otto J. Mayer | 16. 8 |
| Joseph Levy | 16. 8 |
| James E. Hassenger | 4. 8 |
| Stanhope H. King | 4. 8 |
| George Hammer | 4. 8 |
|  | 100. 0 |

During the years under consideration the stockholders served in the capacities indicated and drew salaries as follows:

| Position. | | Salary. | |
| --- | --- | --- | --- |
| | | 1919. | 1920. |
| Otto J. Mayer | President | $3,000 | $3,000 |
| Harry S. Kaufman | Vice president | 15,000 | 18,000 |
| George Hammer | Secretary and bookkeeper | 2,160 | 2,600 |
| James E. Hassenger | Manager of casualty and surety dept | 2,835 | 3,300 |
| Stanhope H. King | Manager of auto insurance dept | 3,150 | 4,500 |
| Joseph Levy | None | None. | None. |

Of the stockholders, Harry S. Kaufman, George Hammer, James E. Hassenger, and Stanhope H. King devoted their entire time to the active operation of the business. Otto J. Mayer, who had an office in petitioner's office, was interested in other corporations, of one of which he was president, and of another he was secretary-treasurer. While in his office he was available to the other stockholders and to the employees for conferences and advice about the business whenever they desired to consult with him. When called on in particular instances he discussed with the employees matters relating to the extension of credit and with respect to collections. If a customer was slow in paying and Mayer's advice was asked about him, he would some times suggest that the company "go after him" or "go easy with him," or words to that effect. He would some times suggest that a certain person be interviewed with the object of securing business. He occasionally advised with respect to the manner of keeping the books. He assisted in the preparation of the income-tax returns. These are illustrative of the activities performed by him in behalf of the petitioner. He from time to time gave advice as to general policies to be pursued, but he was not regularly engaged in the active conduct of the business. Joseph Levy took no part in the active conduct of the business.

For 1919 and 1920 the total gross income from insurance was $77,616.04 and $100,988.22, respectively. Gross earnings from the general agency business were $10,453.43 for 1919, and $10,998.06 for 1920.

Dividends amounting to $333.12 were received by petitioner in 1919 on stock owned by it.

The petitioner's balance sheets for the years involved were as follows:

| | Dec. 31, 1918. | Dec. 31, 1919. | Dec. 31, 1920. |
|---|---|---|---|
| **ASSETS.** | | | |
| Real estate | | | $45,000.00 |
| Bills receivable | $750.00 | | |
| Liberty bonds | 5,487.50 | $6,450.00 | |
| Stock | 9,005.00 | 14,505.00 | |
| Office furniture and fixtures | 2,000.00 | 3,088.17 | 4,080.22 |
| Accounts receivable | 64,085.98 | 99,304.93 | 111,727.40 |
| Cash | 8,828.77 | 16,338.27 | 24,910.26 |
| Total | 90,157.25 | 139,686.37 | 185,717.88 |
| **LIABILITIES.** | | | |
| Capital stock | 10,000.00 | 25,000.00 | 25,000.00 |
| Undivided profits | 13,004.39 | 9,671.79 | 22,564.85 |
| Reserve for unpaid contingent commissions | 2,700.00 | | |
| Reserve for dividends | | 12,500.00 | |
| Dividends payable | | | 12,500.00 |
| Otto J. Mayer | 4,100.00 | | |
| Bills payable | 6,500.00 | 3,000.00 | 40,000.00 |
| Accounts payable | 53,852.86 | 89,514.58 | 85,653.03 |
| Total | 90,157.25 | 139,686.37 | 185,717.88 |

The accounts receivable on December 31, 1918, of $64,085.98 represented premiums due on local business of $31,646.80, and premiums due on business from outside New Orleans of $30,022.95, the remainder being composed of small amounts owed by insurance companies and loans of small amounts made to stockholders.

The accounts receivable of $99,304.93 on December 31, 1919, were made up of $57,585.43 representing premiums due on local business, $38,520.86 due on business from outside New Orleans, and $3,198.64 due from stockholders and employees on account of loans.

The $111,727.40 representing accounts receivable on December 31, 1920, consisted of $78,040.20 due on local business, $30,887.27 due on business outside of New Orleans, and $2,799.93 representing loans to stockholders, miscellaneous items, and petty cash.

The accounts payable of $53,852.86, $89,514.58, and $85,653.03, outstanding at the close of the years 1918, 1919, and 1920, respectively, represented the net amounts due the home office by the petitioner.

The item of $40,000 representing bills payable on December 31, 1920, resulted from petitioner's temporarily financing the purchase of an office building by bank loans made during the year.

On March 21 and 22, 1919, a dividend of $14,997.67 was paid. On December 31, 1919, an amount of $12,500 was set aside from which to pay a dividend. A dividend of $12,500 was declared on December 31, 1920.

The petitioner was not a personal service corporation.

*Judgment will be entered on 10 days' notice, under Rule 50.*